# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Roxann Louise Anderson, | Case No. 17-cv-1650 (SER) |
| Plaintiff, | |
| v. | ORDER |
| Nancy A. Berryhill, Acting Commissioner of Social Security, | |
| Defendant. | |

STEVEN E. RAU, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff Roxann Louise Anderson ("Anderson") seeks review of the Acting Commissioner of Social Security's (the "Commissioner") denial of her application for disability insurance benefits ("DIB"). *See* (Am. Compl.) [Doc. No. 3]. The parties filed cross-motions for summary judgment. (Mot.) [Doc. No. 13]; (Def.'s Mot. for Summ. J.) [Doc. No. 15]. For the reasons set forth below, the Court denies Anderson's Motion for Summary Judgment and grants the Commissioner's Motion for Summary Judgment.

## I.    BACKGROUND

### A.    Procedural History

Anderson protectively filed for DIB on October 24, 2014, citing an alleged onset date ("AOD") of November 1, 2014. (Admin. R.) [Doc. No. 12 at 71–72, 74].[1] Anderson claimed disability due to head trauma, bulging disks in her neck, a bulging disk in her back, and pain in

---

[1] The ALJ stated that the AOD was October 24, 2014. *See* (Admin. R. at 10). Ultimately, this is a technical distinction without a difference, because DIB benefits are generally calculated based on the filing date (absent an earlier AOD), but the Court notes the discrepancy for the benefit of the reader. *See, e.g.*, 20 C.F.R. §§ 404.131, 404.315 (stating that DIB benefits may be paid for up to twelve months retroactively, if disability can be established before the filing of the application).

her left leg. (*Id*. at 188). Anderson's claim was denied initially and upon reconsideration. (*Id*. at 10). Following a hearing, the administrative law judge (the "ALJ") denied benefits to Anderson on January 13, 2017. *See* (*id*. at 10–23). The Appeals Council denied Anderson's request for review on April 18, 2017, rendering the ALJ's decision final. (*Id*. at 1–3); *see also* 20 C.F.R. § 404.981. Anderson initiated the instant law suit on May 18, 2017. (Am. Compl.).[2]

B. **Factual Background**

At the time of her AOD, Anderson was fifty-five years old which makes her a "person of advanced age." (Admin. R. at 71); *see also* 20 C.F.R. § 404.1563(e). Anderson completed high school in 1977 and was recertified as a certified nursing assistant ("CNA") in the 2014–15 timeframe. *See, e.g.*, (Admin. R. at 46, 189).

1. **Testimony Before the ALJ**

a. **Anderson**

Anderson testified that she currently lives by herself in Altura, Minnesota. *See* (*id.* at 43, 57). Anderson told the ALJ that it took her approximately two and a half hours by car to appear at the hearing and that she was driven by a friend because she sometimes "get[s] nervous" while driving. *See* (*id.* at 43–44, 57). Anderson also testified that she has a driver's license with no driving restrictions, although she self-limits her driving due to her nervousness. *See* (*id.* at 44, 57). Anderson stated that it was difficult for her to stand for long periods of time and that she found it difficult to remain seated for more than twenty or twenty-five minutes. *See* (*id.* at 55, 57). As it related to her travel to the hearing, Anderson stated that she got out of the car during stops or "mov[ed] around in the car." (*Id.* at 57).

---

[2] The only operative pleading that Anderson filed was the Amended Complaint.

Prior to back surgery—which was performed a few months before the hearing—Anderson stated that she worked twice a week for eight-hour shifts performing cleaning tasks and watching people at an assistive living facility. *See* (*id.* at 44–45). Anderson also stated that after her back surgery she no longer works, although she does look for work. (*Id.* at 46). Furthermore, Anderson mentioned that she must "wait until the doctor takes me off my limit to work." (*Id.*). Specifically as it relates to her post-operative condition, Anderson testified that "[t]he pain is gone in my right leg, but there's tingling down my left leg. And my left arm has got tingling in it." (*Id.* at 47). At the hearing Anderson used one cane to ambulate, although she testified she normally uses two canes because her "balance is not good" and Anderson believes her balance issues are worsening. (*Id.* at 49). Anderson also testified about a head injury she suffered when she was fifteen. Specifically, Anderson stated that she does not remember her childhood and that even now, her "memory is not good." (*Id.* at 59). For example, Anderson testified that she relies on her cousin and her neighbor to remind her of appointments and that she loses or forgets where she puts her reminders for these appointments. (*Id.* at 59–60).

With respect to other activities of daily living, Anderson testified that she pays her own bills, occasionally has neighbors stop by to check on her, and that her son comes to see her about once a month. (*Id.* at 47, 50). Anderson mentioned that the neighbors help her keep her place clean, but before her back surgery she maintained her home. *See* (*id.* at 51). Anderson stated she does not have any hobbies and limits her reading to "recipes and stuff," because she has a hard time remembering what she reads. *See* (*id.* at 61). Anderson testified that she tries to avoid watching television to pass the time, instead opting to go for walks—as recommended by her doctors. *See* (*id.* at 61–62, 64). Anderson also testified that she typically does her rehabilitation at the local YMCA twice per week, and her therapists are aware that she is doing physical therapy

independently. *See* (*id.* at 63). Finally, Anderson testified that she attends church once per week. (*Id.* at 65).

## 2. Medical Evidence[3]

Anderson was seen by numerous medical professionals complaining generally of neck, back, and leg pain. *See, e.g.*, (*id.* at 325–27, 358–63, 393–96, 429–39, 471–73). In some instances, her discomfort was noted by the treating professional. *See, e.g.*, (*id.* at 473) (stating Anderson was in a "significant degree of discomfort"). During many of these visits, Anderson demonstrated appropriate strength, range of motion, and gait. *See, e.g.*, (*id.* at 327) (noting intact lower extremity strength); (*id.* at 362) (noting 5/5 strength, normal gait, and heel-toe walking); (*id.* at 395) (stating that Anderson's range of motion in both legs was within the normal range); (*id.* at 425) (stating "[l]ower extremity strength is approximately symmetrical"); (*id.* at 431) (noting 5/5 strength in the lower extremities and a gait "within normal limits"); (*id.* at 440) (stating Anderson "ambulates without any difficulty, showing no signs of focal weakness"); (*id.* at 473) (stating Anderson was in a "significant degree of discomfort" but that her "straight leg test is negative").

At various stages of treatment, Anderson declined more aggressive forms of medical intervention. *See, e.g.*, (*id.* at 295) (stating that Anderson used over the counter pain medication to manage her pain and was not interested in a surgical intervention); (*id.* at 359) (stating that she

---

[3] The Court has reviewed the entire administrative record but summarizes only the evidence necessary to provide context for the issues before the Court, specifically as they relate to the ALJ's determination that Anderson's condition did not meet, and was not medically equivalent to, Listings 1.02 and 1.04, whether the ALJ's RFC was correct given the weight of the medical evidence, and whether the ALJ properly discounted Anderson's subjective complaints. *See generally* (Mem. of Law in Supporting Pl.'s Mot. for Summ. J., "Pl.'s Mem. in Supp.") [Doc. No. 14]. The Court focuses on these determinations in its analysis. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (stating the claimant waives issues not raised before the district court).

was not interested in surgery); (*id.* at 434) (stating that she has repeatedly declined surgical interventions and "was somewhat hesitant" about receiving pain injections). Specifically, as early as 2014 she was informed by Jerry Davis, MD ("Dr. Davis"), that she was a surgical candidate for her back pain, but she declined surgery. *See* (*id.* at 295, 359); *see also* (*id.* at 434). Additionally, prior to surgery, medical professionals noted that Anderson could walk without the need for "any type of assistive device." (*Id.* at 394). Over time, Anderson began accepting more aggressive medical interventions. Specifically, she changed her mind regarding receiving pain injections in 2014. *See* (*id.* at 429–32). Furthermore, in 2016, Anderson agreed to have surgery. *See, e.g.*, (*id.* at 490, 496–97, 499–500).

After Dr. Davis performed Anderson's back surgery, he conducted a post-operative consultation. *See* (*id.* at 499–502). At the appointment, Anderson presented with strength and gait in the normal range. *See* (*id.* at 500) (stating Anderson demonstrated 5/5 strength bilaterally, has "an even spontaneous gait," notwithstanding tightness in her right buttock). Dr. Davis noted that "[s]he is doing very well"; reporting pain of one on a ten-point scale; and was not taking pain medication. (*Id.* at 502). Dr. Davis found Anderson's progress to be "quite remarkable given the degree of pain she had prior to the surgery and the extensive nature of the surgery itself." (*Id.*).

### 3. ALJ's Decision

On January 13, 2017, the ALJ issued a decision concluding that Anderson was not disabled after conducting a five-step analysis prescribed by 20 C.F.R. § 404.1520(a)-(g). (*Id.* at 10–23).

At step one, the ALJ determined that Anderson had not engaged in substantial gainful activity as of the AOD. *See* (*id.* at 12). At step two, the ALJ found Anderson to have the

following severe mental impairments: "[d]egenerative disc disease of the cervical and lumbar spine; degenerative joint disease of the bilateral hips; and [an] organic mental disorder with some cognitive deficits." (*Id.*).

At step three, the ALJ considered Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 12.02 (organic mental disorders), and 12.03 (schizophrenia spectrum and other psychotic disorders). *See* (*id.* at 13). The ALJ concluded that Anderson's impairments did not meet, or medically equal, the criteria of these Listings. *See* (*id.* at 13–15). With respect to Listing 1.02, the ALJ concluded—without providing specific citations to the record—that "the evidence does not demonstrate that the claimant has the inability to ambulate effectively" as required by Listing 1.02. (*Id.* at 13). With respect to Listing 1.04, the ALJ concluded—again without providing specific citations to the record—that "the record evidence fails to establish spinal arachnoiditis (1.04B) or lumbar spinal stenosis with pseudoclaudication (1.04C)" and thus found that Anderson's "degenerative disc disease fails to meet or medically equal listing level severity." (*Id.*). That said, in later portions of the ALJ's decision unrelated to his Listings determination, he does discuss portions of the record. *See, e.g.*, (*id.* at 19) (stating that the record reflected that Anderson could walk without any difficulty, and even after surgery, she "still had 5/5 strength in the lower extremities, spontaneous gait, [and] was able to toe/heel walk").

At step four, the ALJ analyzed Anderson's RFC. (*Id.* at 16–22). The ALJ found that Anderson had the RFC

> to perform light work, as defined in 20 CFR 404.1567(b) except lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting, standing, and walking would be limited to 6 hours in an 8-hour work day; overhead reaching would be limited to occasional bilaterally; occasional climbing of ramps and stairs; never climb ladders, ropes, or scaffolds; frequent stooping and crouching; limited to performing simple routine repetitive tasks; limited to simple work related decisions; interaction with co-workers, supervisors, and the general public would be occasional brief and superficial contact . . . .

(*Id.* at 16).

With respect to the ALJ's determination regarding certain physical limitations in the RFC, the ALJ stated because Anderson's "functioning was [at] the Light exertional level prior to surgery," because Anderson stated that she is improving "very much" postoperatively, and because she "is not taking anymore [sic] narcotic pain medications, and has a good prognosis," the ALJ did not believe that additional physical limitations were warranted. (*Id.* at 21). With respect to the ALJ's findings regarding Anderson's concentration, persistence, and pace, the ALJ first noted that many of the Anderson's activities of daily living "require a good deal of concentration like driving, using the telephone, looking for jobs at the library, cooking, mowing the lawn, watching television, going to church, swimming, and watching sporting events." (*Id.* at 14). The ALJ also concluded that record evidence supports a finding of only moderate difficulties. *See* (*id.* at 14–15). For example, during the consultative examination with William Dickson, PhD, LP. the ALJ noted that Anderson would "abruptly jump from one topic to another, but had no difficult[y] reoriented with minor prompting." (*Id.*). The ALJ also stated that Anderson's treating medical professionals never raised concerns regarding Anderson's ability to "understand[] treatment recommendations, maintain[] conversation in the treatment setting, or ask[] appropriate questions." (*Id.* at 15). The ALJ also noted that Anderson demonstrated some deficiencies in a subset of the WAIS-IV testing, but that Anderson was "alert and oriented in all spheres and had a firm grasp of reality."[4] (*Id.*). The ALJ concluded from the record evidence that Anderson has never "experienced any episodes of decompensation or extended duration"

---

[4] The WAIS-IV represents improvements over the WAIS-III and is designed to measure intellectual functioning. *See* Gordon E. Taub, PhD & Nicholas Benson, PhD, *Matters of Consequence: An Empirical Investigation of the WAIS-III & WAIS-IV & Implications for Addressing the Atkins Intelligence Criterion*, 13 J. of Forensic Psychol. Prac. 27, 27, 30–31 (2013).

because there is nothing in the record suggesting a "psychiatric hospitalization, enrollment in day treatment, or increase in outpatient psychotherapy." (*Id.*). Finally, the ALJ noted that Anderson "has worked after the alleged onset date at least at the same capacity as the residual functional capacity." (*Id.* at 21).

At step five, the ALJ concluded that Anderson is capable of past relevant work as a house cleaner and assembler of small parts. *See* (*id.* at 22–23). As a result, the ALJ concluded that Anderson is not disabled. (*Id.* at 23).

## II. DISCUSSION

Anderson argues that she is entitled to summary judgment for three reasons: (1) the ALJ improperly ignored limitations when determining the RFC; (2) the ALJ erred when considering whether Anderson's impairments met or equaled Listings 1.02 and 1.04; and (3) the ALJ impermissibly discounted Anderson's subjective complaints. (Pl.'s Mem. in Supp. at 22–30). The Commissioner argues that Anderson failed to meet her burden demonstrating disability and that substantial evidence supports the ALJ's findings. (Def.'s Mem. in Supp. of Mot. for Summ. J., "Def.'s Mem. in Supp.") [Doc. No. 16 at 5–21]. The Court concludes that the ALJ's findings are supported by substantial evidence in the record as a whole and thus the ALJ did not err when rendering his adverse disability determination.

### A. Legal Standard

If "substantial evidence" supports the findings of the Commissioner, then these findings are conclusive. 42 U.S.C. § 405(g). The Court's review of the Commissioner's final decision is deferential because the decision is reviewed "only to ensure that it is supported by substantial evidence in the record as a whole." *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003) (internal quotation marks omitted). The Court's task is limited "to review[ing] the record for

legal error and to ensur[ing] that the factual findings are supported by substantial evidence." *Id.* This Court must "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Burnside v. Apfel*, 223 F.3d 840, 843 (8th Cir. 2000).

A court cannot reweigh the evidence or "reverse the Commissioner's decision merely because substantial evidence would have supported an opposite conclusion or merely because [a court] would have decided the case differently." *Harwood v. Apfel*, 186 F.3d 1039, 1042 (8th Cir. 1999).

### B. Analysis

#### 1. RFC Determination

The ALJ concluded that Anderson is capable of light work, primarily because she was capable of that exertional level before her surgery and nothing in the postoperative recovery suggested she should be assigned additional physical limitations. *See* (Admin. R. at 21). This finding is supported by substantial evidence in the record as whole. There is record evidence demonstrating that while Anderson was in physical therapy prior to surgery, she told her physical therapist that she was not currently working, but that she "was looking for a cleaning job." (*Id.* at 315). She also stated that she walked, biked, and attended water aerobics classes at her local YMCA. (*Id.*). In addition, her physical therapy was successful; she was discharged after meeting "her short term and long term goals." (*Id.* at 308). That is, substantial evidence supports the ALJ's conclusion that Anderson was capable of light work prior to surgery.

Likewise, substantial evidence in the record as a whole supports the ALJ's conclusion that Anderson's post-operative prognosis was good. Specifically, her surgeon, Dr. Davis, noted that Anderson was only complaining of low intensity pain and was not taking pain medications. (*Id.* at 502). Under the circumstances, Dr. Davis opined that Anderson "is doing very well" and

found her progress to be "quite remarkable given the degree of pain she had prior to the surgery and the extensive nature of the surgery itself." (*Id.*). Dr. Davis stated that Anderson was still under a temporary lift/carry limit but expected Anderson to undergo physical therapy and would re-evaluate her condition "in six weeks." (*Id.*). Given Anderson's prior success regarding physical therapy, there is nothing to suggest that the ALJ's conclusion is not supported by substantial evidence in the record as whole. *Cf.* (*id.* at 308) (Anderson's physical therapy discharge notes where it was observed that she had met all short- and long-term goals). That is, the ALJ's conclusion that Anderson failed to demonstrate a "decreased [exertional level] for a full 12-month period" after surgery is supported by substantial evidence in the record as a whole. *See* (*id.* at 21); *cf. Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993) (holding that to be found disabled under the social security statute, "it is the disability which must be continuous for 12 months, not the impairment").

Anderson's remaining argument regarding the ALJ's failure to properly accommodate her mental limitations is equally unavailing. The ALJ noted that none of Anderson's medical providers raised concerns with Anderson's ability to understand treatment recommendations or otherwise understand her treatment protocols. *See* (Admin. R. at 20). Furthermore, the ALJ concluded that Anderson "has not reported that she has had problems at work at any time when she was performing unskilled work." (*Id.*). These statements are supported by substantial evidence.[5] *See, e.g.*, (*id.* at 52–55) (Anderson discussing her work history at her hearing and referencing only physical and not cognitive difficulties as reasons why she cannot perform certain past work); (*id.* at 308) (stating that Anderson had achieved both her short- and long-term rehabilitation goals); (*id.* at 315) (stating Andesron was looking for cleaning work); *see also*

---

[5] The above findings also led the ALJ to conclude that Anderson could return to work as a cleaner, one of the jobs she performed prior to the surgery. *See* (*id.* at 22–23).

*Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) ("Seeking work . . . [is] inconsistent with complaints of" disability).

As a result, substantial evidence supports the ALJ's conclusion that Anderson is capable of performing light work.

### 2. Listings Determinations[6]

The ALJ determined that Anderson did not meet either Listing 1.02 or Listing 1.04. *See* (Admin. R. at 13). Arguably, this portion of the ALJ's decision could have benefited from more clarity. Specifically, many of the ALJ's statements in this section of his decision could have been better supported with more and specific references to the record. *See generally* (*id.*). That said, it is well-settled that an ALJ's alleged failure to elaborate "does not require reversal" where the "record supports [the ALJ's] overall conclusion." *See Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006); *see also Jones v. Astrue*, 619 F.3d 963, 970 (8th Cir. 2010); *Hepp*, 511 F.3d at 806 (stating "an arguable deficiency in opinion-writing technique does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome" (internal quotation marks omitted)). Here, it is clear that the ALJ's decision with respect to the Listings is supported by substantial evidence because the ALJ provides additional reasoning in other portions of his decision that support his conclusions.

For example, with respect to Listing 1.02, the ALJ stated that the record "does not demonstrate that the claimant has the inability to ambulate effectively" as required by the Listing

---

[6] As described above, nothing in the record demonstrates that Anderson's condition is worse post-operatively. As a result, the Court discusses Anderson's medical records both before and after her back surgery. That said, even if her conditioned had worsened post-operatively—which again is not supported by substantial evidence—Anderson bears the burden of establishing disability, which she cannot do solely on the basis of her post-operative condition given the timing of her surgery—performed on August 1, 2016—and the ALJ's decision—issued on January 13, 2017. *See* (Admin. R. at 23, 497–98); *see also Titus*, 4 F.3d at 594 (8th Cir. 1993).

11

(*Id.* at 13). In other portions of his decision, the ALJ concluded that Anderson "still had 5/5 strength in the lower extremities, spontaneous gait, [and] was able to toe/heel walk" in the context of supporting his RFC determination. (Admin. R. at 19). The ALJ also identified record evidence when concluding that Anderson "was seen walking normally while at visits for other unrelated medical condition[s]"; [h]er lower extremity strength was normal on many occasions"; "straight leg raises here largely negative"; "[t]here was no evidence of neurological compromise, muscle atrophy, or weakness in the lower extremities"; and "range of motion was normal and reflexes were normal." (*Id.*). Substantial evidence in the record as whole supports each of the ALJ's findings. *See, e.g.*, (*id.* at 327) (noting intact lower extremity strength); (*id.* at 362) (noting 5/5 strength, normal gait, and heel-toe walking); (*id.* at 395) (stating that Anderson's range of motion in both legs was within the normal range); (*id.* at 425) (stating "[l]ower extremity strength is approximately symmetrical"); (*id.* at 431) (noting 5/5 strength in the lower extremities and a gait "within normal limits"); (*id.* at 440) (stating Anderson "ambulates without any difficulty, showing no signs of focal weakness"); (*id.* at 473) (stating Anderson was in a "significant degree of discomfort" but that her "straight leg test is negative"); (*id.* at 500) (stating Anderson demonstrated 5/5 strength bilaterally, has "an even spontaneous gait," notwithstanding tightness in her right buttock).

With respect to Listing 1.04, the ALJ concluded that Anderson's degenerative disk disease does not meet the Listing because the record does not "demonstrate a nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight leg raising." (*Id.* at 13). Elsewhere in his decision, the ALJ noted that an MRI "showed some worsening" related to previous imaging but that generally "[t]here was no evidence of neural compromise." *See* (*id.* at

18). These conclusions are supported by substantial evidence in the record as a whole. *See, e.g.*, (*id.* at 301–02) (MRI results that do not suggest neural compromise); (*id.* at 395) (stating that Anderson's range of motion in both legs was within the normal range); (*id.* at 473) (stating Anderson was in a "significant degree of discomfort" but that her "straight leg test is negative"). *But see* (*id.* at 455) (stating Anderson had "a negative straight leg raise on the left and a positive straight leg extension on the right side").

As a result, the ALJ's determination that Anderson does not meet or medically equal Listings 1.02 or 1.04 is supported by substantial evidence in the record as whole.

### 3. Anderson's Subjective Complaints

Anderson argues that the ALJ's determination regarding her subjective complaints of pain was not in accord with *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). *See* (Pl.'s Mem. in Supp. at 29–30). The Court finds Anderson's argument in this regard unpersuasive. The ALJ stated at great length why the record evidence, including activities of daily living, conservative modalities of treatment, and other factors demonstrate that Anderson's impairments are less extreme than her subjective complaints suggest. *See* (Admin. R. at 19–22). Specifically, as it relates to Anderson's physical impairments, the ALJ concluded that prior to surgery, treatment was conservative and mostly effective. *See* (*id.* at 19). Furthermore, the ALJ correctly concluded that "[d]eclining potentially helpful treatment modalities is not consistent with a finding of disability." (*Id.*); *see also Moore v. Astrue*, 572 F.3d 520, 525 (8th Cir. 2009) (stating that "conservative treatments were inconsistent with" claims of disabling pain); *Lovell v. Colvin*, 137 F. Supp. 3d 347, 354 (W.D.N.Y 2015) (finding that conservative medical treatment supports a finding "that plaintiff is not as restricted as [she] claims"). The ALJ also noted that prior to surgery, Anderson "was going for walks, riding [her] bicycle, and going to the YMCA for

13

exercise." (Admin. R. at 19). These observations are supported by substantial evidence in the record as a whole, and the ALJ is permitted to discount Anderson's subjective complaints on the basis of her activities of daily living. *See, e.g.*, (*id.* at 210–11, 315, 393); *accord Ponder v. Colvin*, 770 F.3d 1190, 1195 (8th Cir. 2014) (finding that activities such as "cook[ing] . . . , handl[ing] money and pay[ing] bills, shop[ing] for groceries and clothing, watch[ing] television, driv[ing] a vehicle, leav[ing] her house alone, [and] regularly attend[ing] church" are not consistent with allegations of total disability); *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (finding that activities such as driving, shopping, and watching television were inconsistent with the claimant's complaints of disabling pain).

As a result, the ALJ's determination that Anderson's impairments are not as severe as alleged is supported by substantial evidence in the record as a whole.

### 4. Conclusion

Ultimately, Anderson's arguments are designed to encourage the Court to reweigh the evidence—an invitation this Court declines. *See Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006) (stating that courts "do not reweigh the evidence presented to the ALJ" and must "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence" (internal quotation marks omitted)); *Harwood*, 186 F.3d at 1042 (stating that a court cannot reweigh the evidence or "reverse the Commissioner's decision merely because substantial evidence would have supported an opposite conclusion or merely because [the court] would have decided the case differently"). Having determined that the ALJ's findings are supported by substantial evidence, this Court's analysis is complete, and the ALJ's decision is affirmed. *Accord Gonzales*, 465 F.3d

at 894; *Harwood*, 186 F.3d at 1042. Consequently, Anderson's Motion for Summary Judgment is denied and the Commissioner's Motion for Summary Judgment is granted.

## III. CONCLUSION

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Roxann Louise Anderson's Motion for Summary Judgment [Doc. No. 13] is **DENIED**;

2. The Acting Commissioner of Social Security's Motion for Summary Judgment [Doc. No. 15] is **GRANTED**; and

3. This case is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated: August 13, 2018                        *s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge